**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ERIC TUTSTONE,** | ) | **CASE NO. 1:12 CV 2963** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| v. | ) | |
| | ) | <u>**OPINION AND ORDER**</u> |
| **BRUCE GARNER,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**CHRISTOPHER A. BOYKO, J.:**</u>

*Pro se* Plaintiff Eric Tutstone filed this *Bivens*[1] action against Federal Agent Bruce Garner, Federal Agent John Morgan, Federal Agent Timothy Kolonick, John Doe Federal Agent, and Corrections Corporation of America ("CCA"). In the Complaint, Plaintiff asserts the arresting officer used excessive force to take him into custody and other officials denied him medical care. He seeks monetary and injunctive relief.

**I. BACKGROUND**

On December 7, 2010, federal agents monitored a telephone call in which Plaintiff claimed to have a 16 year-old girl who he was willing to sell for sexual purposes or for use in the sex industry. *See United States v. Tutstone*, No. 1:11 cr 0004 (N.D. Ohio compl. filed Dec.

---

[1] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

10, 2010)(ECF No. 1-1 at 1). A female agent posed as a madam seeking to purchase the girl for $300.00. *Id.* On December 9, 2010, the agents monitored telephone conversations between the female agent and Plaintiff in which Plaintiff agreed to meet the agent later in the day to finalize the transaction. *Id.* Plaintiff later admitted to the agents that he knew he was selling her for sexual purposes. *Id.*

At approximately 4:30 p.m. on December 9, 2010, the agents observed Plaintiff walking into the Starbucks coffee shop at 1374 West 6th Street, Cleveland, Ohio with an adult female companion and the 16 year-old girl. *Id.* There, he met with the agent and accepted $300.00 in cash in exchange for the girl. *Id.* He then exited the coffee shop with his adult female companion, leaving the girl with the agent. *Id.* Federal agents were waiting to arrest him as he walked out of the coffee shop.

Plaintiff claims he was injured in the course of the resulting arrest. He contends that upon his exit from Starbucks, he noticed that his car was blocked in by a dark blue minivan. Four men got out of the minivan and grabbed him and the woman who accompanied him. He claims one agent grabbed the back of his jacket while Agent Garner grabbed the back of his neck. He indicates his body was slammed against the van, and Agent Garner used his forearm to secure Plaintiff's head against the van. Plaintiff states that Garner exerted pressure to keep his head in place. He contends he complained about the pressure on his head as the other agents were going through his pockets but Garner did not reduce the pressure he applied. He alleges that when Garner finally released him to place him in the van, he pushed off of the Plaintiff using his forearm for leverage. Plaintiff contends this action cause a fracture to his jaw.

Plaintiff and his female companion were transferred for questioning to the FBI offices in

Cleveland. Plaintiff alleges he told the officers his jaw was broken but they did not believe him and continued their questioning. He contends that after questioning, Agent Morgan drove him to the Cuyahoga County Jail. He states he told Agent Morgan in the car that his jaw was broken and required medical attention. He indicates that Agent Morgan did not believe him to be injured and continued to the jail. He alleges he told the county intake officer that his jaw was broken, but that officer placed him in a holding cell, where he remained for the night.

Plaintiff appeared in court the next morning. Thereafter, he was transported to the Northeast Ohio Correctional Center ("NEOCC"). He claims he told the NEOCC intake officer that his jaw was broken. The officer told him to notify the nurse during his intake visit with her. He contends he did as instructed and the nurse told him to sign up for sick call on Monday. He indicates he was in pain all weekend until he was able to sign up for sick call on Monday, December 13, 2010. The nurse made an appointment for him to see the doctor. He claims he finally saw the institution physician on December 22, 2010. The physician examined the jaw and made a preliminary diagnosis that Plaintiff's jaw was indeed fractured. Plaintiff was given a consultation with an oral surgeon on January 5, 2011. The surgeon ordered an panoramic x-ray which confirmed the fracture. He contends that CCA officials denied his requests for surgery.

Plaintiff asserts four claims for relief. First, he asserts Agent Garner used excessive force to subdue him in the course of the arrest. Second, he asserts Agents Morgan, Kolonick and John Doe failed to protect him from the excessive force used by Garner. Third, he asserts Garner, Morgan, Kolonick, and John Doe were deliberately indifferent to his serious medical needs. Finally, Plaintiff alleges CCA officials were deliberately indifferent to his serious medical needs.

-3-

## II. LAW AND ANALYSIS

**Standard of Review**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough fact to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

---

[2] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

do." *Id*. Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id*. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009), further explains the "plausibility" requirement, stating that " a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**Excessive Force During Arrest**

Claims regarding a police officer's use of excessive force in the course of an arrest or other seizure are governed by the Fourth Amendment. *See Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Fourth Amendment requires that an officer's use of force be objectively reasonable, and courts must balance the consequences to the individual against the government's interest in effecting the seizure. *See Graham*, 490 U.S. at 396. This standard contains a built-in measure of deference to the officer's judgment about the level of force necessary in light of the circumstances of the particular case. *See Id*.

In determining whether there has been a violation of the Fourth Amendment, this Court does not focus on the extent of the injury inflicted, but whether an officer subjects an arrestee to

"gratuitous violence." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 252-54 (6th Cir. 2010). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham,* 490 U.S. at 396. The question of whether the force used by the officer was excessive turns on the objective reasonableness of the officer's conduct under the circumstances. *Id.* at 397. The Supreme Court has provided three factors for courts to consider in evaluating an excessive force claim: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Id.* at 396; *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir.2001). These factors must be considered from the perspective of a reasonable officer on the scene, who is often forced to make quick judgments under rapidly evolving and tense circumstances. *Graham*, 490 U.S. at 397.

      Here, Plaintiff must allege facts to suggest that Agent Garner's actions were objectively unreasonable in light of the circumstances of the case. Plaintiff was arrested on the street as he was exiting a coffee shop with a female companion. He claims Garner pushed him up against the police van, and used his forearm to hold Plaintiff's head against the van. Plaintiff claims that the officer applied a sufficient amount of pressure to cause him pain. He suggests he suffered a broken jaw when the officer used his forearm as leverage to push away from the Plaintiff after he was handcuffed. Plaintiff claims this action was gratuitous and done to cause him additional pain. Because at the pleading stage, Plaintiff only needs to plead enough facts to set forth a claim that is plausible on its face, this allegation survives review under 28 U.S.C. §1915(e).

      Plaintiff also contends Agents Morgan, Kolonick and John Doe Agent are also liable for

a Fourth Amendment violation because they failed to protect him from the excessive force used by Garner. A police officer who fails to act to prevent the use of excessive force may be held liable where "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997). In this case, Plaintiff does not plead sufficient facts to plausibly suggest Agents Morgan, Kolonick and Doe can be liable for failing to prevent harm from occurring. He contends that while Garner held him against the vehicle with his forearm, Agent Morgan was on the other side of the van taking his female companion into custody. He claims John Doe Agent was frisking him. Plaintiff does not allege that Agent Kolonick was present at the arrest. He gives no indication that these other officers were aware of the amount of pressure being applied by Agent Garner or that they had the an opportunity or means to prevent the officer from gaining leverage to stand up using the forearm against Plaintiff's head. He fails to state a claim against Agents Morgan, Kolonick and Doe for use of excessive force in the course of his arrest.

**Deliberate Indifference to Serious Medical Needs After Arrest**

Plaintiff next claims that Agents Morgan, Garner, Kolonick and Doe were deliberately indifferent to his serious medical needs after his arrest. He claims he was taken to FBI headquarters for questioning. The Due Process Clause of the Fourteenth Amendment requires government officials to provide adequate medical care to individuals injured while apprehended by police. *City of Revere v. Massachusetts General Hosp.,* 463 U.S. 239, 244 (1983); *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1096 (6th Cir. 1992). The standard used in assessing

such a claim is the same for both arrestees and convicted inmates: deliberate indifference. *Ford v. County of Grand Traverse,* 535 F.3d 483, 495 (6th Cir. 2008).

A deliberate indifference claim has both objective and subjective components. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir.2011). The objective component requires a plaintiff to show that the medical need at issue is sufficiently serious, while the subjective component requires a showing that the government official had a sufficiently culpable state of mind in denying medical care. *Id*. An official violates the Fourteenth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff had a mandibular fracture, which satisfies the objective component. To state a claim upon which relief may be granted, however, he must also satisfy the subjective component, which requires a showing that each of these agents knew of, and acted with deliberate indifference to Plaintiff's health or safety. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). Deliberate indifference "entails something more than mere negligence." *Farmer*, 511 U.S. at 835. An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. *Id.* at 837. This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.; *Flanory v. Bonn*, 604 F.3d 249, 253-55 (6th Cir. 2010).

In this case, Plaintiff does not allege sufficient facts to suggest that these agents were aware of all of the facts upon which the inference could be drawn that his mandible may have a fracture, and that they actually drew this inference. He does not allege facts suggesting that the

-8-

Morgan, Kolonick or John Doe were aware of the amount of pressure being applied by Garner, or witnessed the moment when Plaintiff believes he sustained the fracture. These individuals were performing other duties incident to the arrest of Plaintiff and his companion, and based on the facts alleged by Plaintiff, would not necessarily have been on notice that anything had happened during the arrest to cause injury to the Plaintiff. Moreover, Plaintiff provides no details about his physical appearance or his symptoms which might lead on the officers to infer Plaintiff's jaw was fractured. Plaintiff was apparently able to speak to the officers, as he alleges he repeatedly told them throughout questioning that he thought Garner broke his jaw. He was seen by officers at the Cuyahoga County Jail and appeared in Court, all without raising concerns about his jaw. Although Plaintiff told these officers that he believed his jaw was fractured, he does not provide facts to suggest that the officers should have inferred that he was injured, that they actually drew this inference and denied him medical care.

**Deliberate Indifference to Serious Medical Needs by CCA**

Finally, Plaintiff claims CCA medical personnel delayed medical treatment for his condition. *Bivens* provides a limited cause of action against individual federal government officers acting under color of federal law alleged to have acted unconstitutionally. *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 70 (2001). *Bivens*' purpose is to deter individual federal officers, not the agency, from committing constitutional violations. A *Bivens* action therefore, cannot be brought against an entity such as the federal prison, the Bureau of Prisons, or the United States Government. *Id.*

CCA, which owns and operates NEOCC, is a private corporation. To avoid imposing asymmetrical liability costs on private prison facilities, the Supreme Court declined to expand

*Bivens* to provide this cause of action against a private prison corporation. *Id*. at 70-74. Plaintiff's *Bivens* claims against CCA must be dismissed.

Even if Plaintiff had asserted this claim against the individual CCA employees who allegedly delayed his diagnosis and treatment, the claim would be dismissed. The Supreme Court declined to extend *Bivens* to the employees of a private prison under certain circumstances. *Minneci v. Pollard*, 565 U. S. \_\_\_\_ , 2012 WL 43511 at* 10, slip op. (U.S. Jan. 10, 2012). A federal prisoner seeking damages from privately employed personnel working at a privately owned and operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as delaying the diagnosis and treatment of a fracture, which is the case here), must seek a remedy under state tort law. *Id*. A *Bivens* remedy cannot be implied. *Id.* Ohio law imposes general tort duties of reasonable care (including medical care) on prison employees. *Id*. at 624-25. Because Plaintiff's medical claim is clearly governed by *Minneci*, he cannot maintain this *Bivens* medical claim against individual employee of CCA.

### III. CONCLUSION

Accordingly, Plaintiff's Fourth Amendment claims for use of excessive force during his arrest against Agents Morgan, Kolonick and John Doe are dismissed pursuant to 28 U.S.C. §1915(e). His Fourteenth Amendment claims for deliberate indifference to serious medical needs are dismissed against all Defendants. The Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.[3] This action

---

[3] 28 U.S.C. § 1915(a)(3) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

shall proceed solely on Plaintiff's Fourth Amendment claim for use of excessive force during arrest against Agent Garner. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon the Defendants.

    IT IS SO ORDERED.


                                            s/ Christopher A. Boyko
                                            CHRISTOPHER A. BOYKO
                                            UNITED STATES DISTRICT JUDGE

DATED: May 8, 2013